541 So.2d 637 (1989)
Leonard J. DIXON, Appellant,
v.
STATE of Florida, Appellee.
No. 87-1054.
District Court of Appeal of Florida, First District.
January 18, 1989.
Rehearing Denied April 27, 1989.
*638 Louis O. Frost, Jr., Public Defender, and James T. Miller, Asst. Public Defender, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard E. Doran, Bureau Chief, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is before us on appeal of appellant's convictions for uttering a forgery and dealing in stolen property. Appellant presents four issues for our review, three of which we affirm without discussion. The fourth issue is whether the court erred in denying appellant's motion for judgment of acquittal for dealing in stolen property, on the grounds that forging and cashing a stolen check is not dealing in stolen property.
The facts are that appellant tried to cash a $495 check at a credit union in Jacksonville. The check, which had been stolen two weeks earlier, was drawn on the account of a yacht sales company. The credit union's tellers had been alerted to watch for these checks, and the teller who dealt with appellant immediately recognized it for what it was. The check was made out to Dennis Moore, and appellant presented a credit union membership card and driver's license in that name. When the teller tried to stall appellant, he took back his check, membership card, and license, and waited for the supposed system malfunction to end. When he saw a police car pull up into the driveway, he became nervous and rapidly left. He was later found at a second-floor exit, trying to disarm a fire exit with a book of matches. He denied ever being in the credit union but was identified.
Appellant relies on the case of Grimes v. State, 477 So.2d 649 (Fla. 1st DCA 1985), wherein this court reviewed the convictions of three men who were charged with food stamp fraud and dealing in stolen property. The basis of the dealing in stolen property charge was that the codefendants were trafficking in the food stamps by cashing them at grocery stores for food. This court reversed the convictions for dealing in stolen property because cashing the stamps for food amounted to personal use. Other "personal use" cases cited by the Grimes decision are Townsley v. State, 443 So.2d 1072 (Fla. 1st DCA 1984) (auto stolen for personal use of thief), and Lancaster v. State, 369 So.2d 687 (Fla. 1st DCA 1978) (stolen engine put to use in thief's own van). The essence of the offense of dealing in stolen property, also referred to as "trafficking," is that the stolen property is being distributed or moved into the stream of commerce so as to have a detrimental effect beyond that of the original theft. A theft, followed by a personal, terminal use of the stolen property by the thief does not have the extra ingredient required for an offense under Section 812.019, Florida Statutes. The "personal use" cases are based on that principle.
Checks, on being cashed, are placed within the stream of commerce and they may be routed through several banks before reaching an ultimate destination. The ripple effect of a stolen, forged check may go beyond the original transfer, as the bogus instrument is subject to continued circulation. The stolen checks in this case thus differ significantly from the food stamps in Grimes. Additionally, cashing a check does not convert it into its ultimate, tangible form. It converts it into another intangible, money, which must be further traded. In this respect, cashing a stolen check for money is no different from any other sale of stolen goods where money is given in payment. We find no basis for application of the "personal use" cases here. Appellant's convictions are, accordingly, AFFIRMED.
BOOTH and WENTWORTH, JJ., concur.
ERVIN, J., concurs and dissents with written opinion.
ERVIN, Judge, concurring and dissenting.
I concur with the majority's opinion, except its treatment of appellant's motion for judgment of acquittal on the charge of dealing in stolen property. As to that point I would reverse the trial court's denial of *639 the motion. This issue, in my judgment, is controlled by Grimes v. State, 477 So.2d 649 (Fla. 1st DCA 1985), where it was held a defendant could not be convicted of dealing in stolen property by knowingly tendering food stamps at a store in exchange for food, because such activity was evidence of theft only, and not of the crime of trafficking or dealing in stolen property, even if the transaction were achieved by some form of transfer, distribution, dispensation, or disposition of the item, as defined in Section 812.012(7)(b), Florida Statutes. I consider the same reasoning applicable to the instant case.
The distinction between checks and food stamps, as advanced in the majority's opinion, does not, in my opinion, call for a different result. Although it is true that checks, unlike food stamps, may be placed in the stream of commerce and thus be subject to continued circulation, this distinction has nothing to do with the essential requisite that the state must establish proof of the defendant's intent to sell, transfer, distribute or otherwise dispose of the property to other persons. In the instant case, proof of the appellant's attempt to cash a forged, stolen instrument does not per se establish proof of an intent also to traffic in stolen property. In Townsley v. State, 443 So.2d 1072, 1073 (Fla. 1st DCA 1984), this court rejected the state's argument that evidence of the defendant's purchase of an automobile at only a fraction of its actual value created an inference that appellant eventually would sell, transfer, distribute, dispense, or otherwise dispose of it.
The lesson derived from Grimes and Townsley is that there must be competent, substantial evidence of a defendant's intent to dispose of property, which he or she has unlawfully obtained. Proof thereof cannot be satisfied from what may possibly occur subsequent to the transaction in question. The above rule as applied to the instant case is, I maintain, supported by the definition of a check itself, defined as "a draft drawn on a bank and payable on demand." § 673.104(2)(b), Fla. Stat. (1987) (U.C.C. § 3-104(2)(b)(1962)). A check "[c]ontain[s] an unconditional promise or order to pay a sum certain in money ... ." § 673.104(1)(b), Fla. Stat. (U.C.C. § 3-104(1)(b)). Moreover, "[a] check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." § 673.409(1), Fla. Stat. (1987) (U.C.C. § 3-409(1)(1962)).
The check attempted to be cashed by appellant below served only to direct the drawee bank to pay the face amount to the bearer. See Williams v. United States, 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767, 773 (1982). Thus, because the check was a mere direction to the bank to pay a certain sum of money to the person named therein, the check's incidental passage through the stream of commerce is immaterial to any decision as to whether the defendant otherwise intended to traffic in stolen property. The transaction as to him was complete once, pursuant to the directions stated on the check, he attempted to negotiate the check to the credit union. While he may be convicted for uttering a forgery, he cannot, under the Grimes-Townsley rationale, also be convicted of dealing in stolen property. I would therefore reverse appellant's conviction for such offense and remand the case with directions to the trial court to enter an order granting appellant's motion for judgment of acquittal.