596 So.2d 1055 (1992)
STATE of Florida, Petitioner,
v.
Jo Ann CAMP, Respondent.
No. 78,085.
Supreme Court of Florida.
April 9, 1992.
*1056 Robert A. Butterworth, Atty. Gen. and David S. Morgan, Asst. Atty. Gen., Daytona Beach, for petitioner.
F. Wesley Blankner, Jr. of Katz, Jaeger and Blankner, Orlando, for respondent.
BARKETT, Justice.
We review State v. Camp, 579 So.2d 763 (5th DCA 1991), based on direct and express conflict with Dixon v. State, 541 So.2d 637 (Fla. 1st DCA), review dismissed, 547 So.2d 1209 (Fla. 1989).[1] The issue is whether attempting to negotiate forged checks constitutes dealing in stolen property under section 812.019, Florida Statutes (1989).
Jo Ann Camp obtained company checks from her employer and either forged her employer's signature or used blank checks pre-signed by him to satisfy her personal credit card debt at Citibank of South Dakota. The State charged her with 36 counts of forgery, 36 counts of uttering a forgery, and 42 counts of dealing in stolen property.[2] The trial court dismissed the 42 counts alleging that Camp was dealing in stolen property. The State appealed, and the district court affirmed, holding that one who "steals for his own account" does not violate section 812.019. Camp, 579 So.2d at 764.
Section 812.019(1) provides:
812.019 Dealing in stolen property. 
(1) Any person who traffics in, or endeavors to traffic in, property that he knows or should know was stolen shall be guilty of a felony of the second degree, punishable as provided in ss. 775.082, 775.083, and 775.084.
"Traffic" is defined under section 812.012(7), Florida Statutes (1989), as:
(a) To sell, transfer, distribute, dispense, or otherwise dispose of property.
(b) To buy, receive, possess, obtain control of, or use property with the intent to sell, transfer, distribute, dispense, or otherwise dispose of such property.
The State argues that under this provision Camp "trafficked" in stolen property when she "transferred" the checks to the bank. The State asks this Court to define the term "trafficking" to include any form of transfer of property and relies on Dixon v. State for the proposition that the thief who puts a stolen check to its normal and intended personal use, thereby placing it into the "the stream of commerce," is guilty of dealing or trafficking in stolen property. See Dixon, 541 So.2d at 638. We cannot interpret the pertinent statutes in this manner.
First, it is a well-established canon of construction that words in a penal statute must be strictly construed. See Perkins v. State, 576 So.2d 1310 (Fla. 1991). Where words are susceptible of more than one meaning, they must be construed most favorably to the accused. Id.; § 775.021(1), *1057 Fla. Stat. (1989). Moreover, section 812.037, Florida Statutes (1989), expressly requires that section 812.019 "be construed in light of [its] purpose[] to achieve [its] remedial goals."
As noted by the court below, section 812.019, which is part of the Florida Anti-Fencing Act, Chapter 77-342, Laws of Florida, is intended to punish those who knowingly deal in property stolen by others. Camp, 579 So.2d at 764. The basic scenario envisions a person who steals and then sells the stolen property to a middleman (the "fence") who in turn resells the property to a third person. See generally G. Robert Blakely & Michael Goldsmith, Criminal Redistribution of Stolen Property: The Need for Law Reform, 74 Mich. L.Rev. 1512 (1976). The statute punishes both the initial thief and the fence. See § 812.012(7), Fla. Stat. (1989). According to its legislative history, this law is
an adaptation of the Model Theft and Fencing Act, consistent with the organization of Florida law, as proposed by G. Robert Blakely and Michael Goldsmith in their exhaustive study on stolen property law. Blakely and Goldsmith, Criminal Redistribution of Stolen Property: The Need for Law Reform, 74 Mich. L.Rev. 1512 (1976). That article focuses on the receivers of stolen property as the central figures in theft activities, and that the law should be focused on the criminal system that redistributes stolen goods.

Staff of Fla. H.R. Select Comm. on Organized Crime, CS for SB 1431 (1977) Memorandum (April 7, 1977) (emphasis added). Thus, this statute was not designed to punish persons who steal for personal use.[3] Rather, it was designed to dismantle the criminal network of thieves and fences who knowingly redistribute stolen property.
We therefore agree with the court below that negotiating stolen checks for personal use, or otherwise deriving personal benefit from stolen merchandise, does not constitute the crime of "dealing in stolen property" as envisioned by the legislature in enacting section 812.019. Otherwise every theft of money in which the money is ultimately transferred to a third person in exchange for goods would constitute a violation of the anti-fencing statute. We agree with the First District that
[e]vidence of theft only, with the intent personally to put the stolen item or items to normal use, constitutes only the crime of theft and not the crime of trafficking or dealing in stolen property within the meaning of chapter 812, Florida Statutes, even if the normal use is achieved by some form of transfer, distribution, dispensation, or disposition of the item.
Grimes v. State, 477 So.2d 649 (Fla. 1st DCA 1985) (tendering stolen food stamps in exchange for food does not constitute dealing in stolen property); accord Williams v. State, 590 So.2d 515 (Fla. 2d DCA 1991) (purchasing stolen alcohol and cigarettes for personal consumption does not constitute dealing in stolen property); Townsley v. State, 443 So.2d 1072 (Fla. 1st DCA 1984) (purchasing stolen Mercedes for personal use does not constitute dealing in stolen property); Lancaster v. State, 369 So.2d 687 (Fla. 1st DCA 1979) (finding a defendant who installed a stolen engine into his own vehicle did not deal in stolen property); cf. Bailey v. State, 559 So.2d 742 (Fla. 1st DCA 1990) (attempting to sell stolen typewriter was neither a personal use nor a necessary incident of personal use and thus constituted dealing in stolen property).
Accordingly, we approve the decision below and disapprove Dixon.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
[2] The State did not charge Camp with theft under section 812.014, Florida Statutes (1989).
[3] In this case, Camp herself negotiated the checks. Our analysis would not apply had she stolen and sold blank checks for others to negotiate.