937 P.2d 587 (1997)
132 Wash.2d 229
The STATE of Washington, Petitioner,
v.
Joseph Robert MICHIELLI, Respondent.
No. 64270-2.
Supreme Court of Washington, En Banc.
Argued March 11, 1997.
Decided May 29, 1997.
Reconsideration Denied July 22, 1997.
*589 Jim Sweetser, Spokane County Prosecutor, Kevin M. Korsmo, Deputy, Spokane, for petitioner.
Julie A. Twyford, Spokane, for respondent.
*588 DOLLIVER, Justice.
The State claims the lower courts erred in dismissing three counts of trafficking in stolen property prior to Defendant's trial. We affirm the trial court, although on different grounds than those stated by the Court of Appeals.
Joseph Robert Michielli (Defendant) allegedly took a rifle, an Impulse fish-finder, and a Uniden Bearcat 100-channel scanner from the house in which he was a tenant. The record does not specify whether Defendant merely rented a room in the house or rented the entire house, and the record does not reveal where the property had been stored in the house. The stolen property belonged to a previous tenant of the residence, who had been storing the property in the residence with the homeowner's permission.
Defendant allegedly pawned the three items on three different days at two different pawnshops. When the owner of the property discovered the items were not where he had stored them in the residence, he confronted Defendant. Within the week, Defendant repurchased the rifle from the pawnshop and returned it to the owner. The police recovered the fish-finder and scanner and returned those items to the owner. Defendant apparently has reimbursed the pawnshops for the money which he had received by pawning the items.
In May 1993 the State filed a complaint in district court. The complaint was accompanied by a probable cause affidavit which described all the facts concerning the missing items and Defendant's alleged pawning of the items. Defendant was arrested on the complaint in June 1993. On July 9, 1993, the State filed an information in superior court charging Defendant with one count of second degree theft for taking the rifle from the residence. The potential sentencing range on the single charge is 0 to 60 days.
Defendant was arraigned on September 2, 1993. He appeared without the benefit of counsel and entered a not guilty plea. At arraignment, trial was set for November 1, 1993. Within three weeks of arraignment, Defendant retained an attorney, who advised Defendant to plead guilty to the theft charge. According to defense counsel, the State refused to accept a guilty plea. On October 27, 1993, three business days before Defendant's scheduled trial date, the prosecutor moved to amend the information to include four additional counts: one count of second degree theft for taking the fish-finder and three counts of first degree trafficking in stolen property for pawning the rifle, fish-finder, and scanner. The sentencing range for the charges in the amended information is 15 to 20 months. Over Defendant's objection, Judge Richard J. Schroeder allowed the amended information. Because the defense attorney was unprepared to go to trial on the four new charges, Defendant was forced to waive his speedy trial right and request a continuance.
After having time to prepare an argument, Defendant moved to dismiss the amended counts. The motion was heard before Judge Kathleen M. O'Connor. Defendant's attorney accuses the State of adding the charges as retaliation for Defendant's refusing to plead guilty to the initial theft count. A deputy prosecutor allegedly told Defendant's attorney "if the State had to go to trial ... Mr. Michielli would have to do jail time since the [S]tate would need to exact something for the added work." Clerk's Papers at 21. The State disputes the content of the conversation. After conducting a pretrial hearing, the trial court entered a written order finding "[t]he ends of justice will be met by dismissing" the four amended counts. Clerk's Papers at 27. Although the written order does not explicitly mention any procedural rule allowing for the dismissal, it is clear from the verbatim report of proceedings on February 28, 1994, that the trial court dismissed the counts under CrR 8.3(b). CrR 8.3(b) authorizes a court to dismiss *590 charges when dismissal is "in the furtherance of justice."
The State appealed the dismissal of the amended counts. The Court of Appeals' majority ignored CrR 8.3(b) and used different reasoning to uphold dismissal of the three trafficking charges. The court held the crime of trafficking was not intended to apply to persons who had stolen the property trafficked. State v. Michielli, 81 Wash.App. 773, 778, 916 P.2d 458 (1996). The court also noted that Defendant's theft and pawning of the items constituted one course of conduct. Michielli, 81 Wash.App. at 778, 916 P.2d 458. The court reinstated the theft count for the fish-finder and upheld the dismissal of the three trafficking counts. Chief Judge Sweeney dissented in the dismissal of the trafficking counts. The State petitioned this court for review, which was granted. 130 Wash.2d 1007, 928 P.2d 415 (1996). Defendant has not yet been tried on any of the charges.
First Issue: Can a defendant who steals property and later sells it be charged with theft and trafficking in stolen property?
The Court of Appeals reinstated the theft charge for the fish-finder, but upheld the trial court's dismissal of the three trafficking charges. Michielli, 81 Wash.App. at 779, 916 P.2d 458. The court, citing a Florida case, held the trafficking statute was intended to apply only to fences or middlemen, not to individuals who stole the property. Michielli, 81 Wash.App. at 778, 916 P.2d 458 (citing Florida v. Camp, 579 So.2d 763 (Fla.Dist.Ct. App.1991), aff'd, 596 So.2d 1055 (Fla.1992)). We do not believe Camp supports the court's holding.
The defendant in Camp had stolen blank checks from her workplace and negotiated them to pay off her personal credit card debt. Florida v. Camp, 596 So.2d 1055, 1056 (Fla.1992). The Supreme Court of Florida determined that the defendant's forging checks did not qualify as trafficking in stolen property. Camp, 596 So.2d at 1057 (trafficking statute "was designed to dismantle the criminal network of thieves and fences who knowingly redistribute stolen property."). Negotiating stolen checks merely involved personal use of stolen property and did not rise to the level of dealing, or trafficking, in stolen property. The trafficking statute "was not designed to punish persons who steal for personal use." Camp, 596 So.2d at 1057 (footnote omitted). The court noted, however, that its analysis "would not apply had [defendant] stolen and sold blank checks for others to negotiate." Camp, 596 So.2d at 1057 n. 3 (emphasis added).
Camp does not support the proposition that a person who steals property cannot also be charged with trafficking in that stolen property; rather, the case holds that negotiating stolen checks merely involves personal conversion of stolen property. The point is illustrated by Camp's citation to Bailey v. Florida, 559 So.2d 742 (Fla.Dist.Ct.App. 1990), which upheld a trafficking conviction where a defendant's attempt to sell a stolen typewriter "was neither a personal use nor a necessary incident of personal use and thus constituted dealing in stolen property[.]" Camp, 596 So.2d at 1057.
In contrast to the facts in Camp, Michielli's selling three stolen items to a pawnshop qualifies as trafficking. The trafficking statute provides, in part:
A person who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree.
RCW 9A.82.050(2). Stolen property is defined as "property that has been obtained by theft, robbery, or extortion." RCW 9A.82.010(9). To traffic is defined as:
to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person.
RCW 9A.82.010(10).
Under the alleged facts, Defendant stole three items from the residence where he was a renter by "wrongfully obtain[ing] ... the property ... of another ... with intent to deprive him of such property[.]" RCW 9A.56.020(1)(a) (definition of theft). Knowing *591 these items were stolen, he sold them to pawnshops. Selling "stolen property to another person" meets the definition of trafficking. RCW 9A.82.010(10). Defendant "knowingly traffic[ked] in stolen property[.]" RCW 9A.82.050(2).
The Court of Appeals distinguished Defendant's actions from the facts in State v. Strohm, 75 Wash.App. 301, 879 P.2d 962 (1994), which appears to be the only case in this jurisdiction addressing the theft/trafficking issue. Strohm headed an organized auto theft ring where he supplied the car keys and paid drug addicts to steal new vehicles. Strohm, 75 Wash.App. at 303, 879 P.2d 962. Strohm used parts from the new stolen cars on older cars, which he then sold at higher prices. The State charged Strohm with one count of theft and numerous counts of trafficking in stolen property. Strohm claimed he could not be convicted of both theft and trafficking on the basis of the same stolen property. Strohm, 75 Wash.App. at 310, 879 P.2d 962. The court disagreed, pointing out that a thief's transferring stolen property to another, an element of trafficking, is a distinct act from the thief's stealing the property. Strohm, 75 Wash.App. at 310, 879 P.2d 962. The theft and trafficking convictions were upheld.
The Court of Appeals below distinguished Strohm on the basis that Strohm "paid others to steal motor vehicles." Michielli, 81 Wash.App. at 778 n. 1, 916 P.2d 458. The court stated:
The crime of trafficking envisions a person who steals and then sells to a middleman (fence) who, in turn, buys the stolen property with the intent to resell it to a third person. It suggests at least a two-party transaction and reflects legislative intent to punish those who knowingly deal in property stolen by others. There is no indication the Legislature intended to convert all second-degree thefts into first-degree felonies when the accused sells or pawns the items taken.
Michielli, 81 Wash.App. at 777-78, 916 P.2d 458. On the contrary, nothing in the trafficking statute precludes the statute from applying to the thief who initially stole the property. Legislative intent is derived first and foremost from the language of the statute. See In re Electric Lightwave, Inc, 123 Wash.2d 530, 536, 869 P.2d 1045 (1994). When the words in a statute are clear and unequivocal, this court must apply the statute as written. See King County v. Taxpayers of King County, 104 Wash.2d 1, 5, 700 P.2d 1143 (1985). Under the plain language of the trafficking statute, one who knowingly sells stolen property can be charged with trafficking, regardless of whether that person is the one who stole the property, and regardless of whether the person sells the property to a fence or an unsuspecting purchaser.
Second Issue: Prior to conviction, can a trial court merge counts on the theory that the Legislature intended only one punishment?
The Court of Appeals also tried to support its dismissal of the trafficking charges by referring to Florida cases which hold a person cannot be convicted of both theft and trafficking when the crimes arise from the same course of conduct. Michielli, 81 Wash. App. at 778-79, 916 P.2d 458 (citing Huffman v. Florida, 642 So.2d 40 (Fla.Dist.Ct.App. 1994) and Burrell v. Florida, 601 So.2d 628 (Fla.Dist.Ct.App.1992)). The court did not mention the merger doctrine in its discussion, but it appears to be the underlying principle on which the court was relying.
The Florida cases do not support the Court of Appeals' holding. Florida has a statute stating:
Notwithstanding any other provision of law, a single indictment or information may, under proper circumstances, charge theft and dealing in stolen property in connection with one scheme or course of conduct in separate counts that may be consolidated for trial, but the trier of fact may return a guilty verdict on one or the other, but not both, of the counts.
Fla.Stat. § 812.025 (1995). See Huffman, 642 So.2d at 41 (reversing a theft conviction and affirming a conviction and sentence for trafficking); Burrell, 601 So.2d at 630 (citing Fla.Stat. § 812.025 and remanding theft and trafficking convictions for the trial court to enter a judgment of conviction on *592 only one of the counts). The Florida cases fail to support the Court of Appeals' ruling in two ways. First, they rely on a statute which has no counterpart in this jurisdiction. Second, neither the cases nor the Florida statute authorize a trial court's dismissal of charges prior to trial; rather, the statute merely forbids guilty verdicts on both theft and trafficking charges when the charges arise from the same scheme or course of conduct.
Besides relying on the inapplicable Florida cases, the Court of Appeals also observed that, "under the purported facts of this case ..., there was one continuous act or transaction of removing property from the residence to the pawn shop." Michielli, 81 Wash.App. at 778, 916 P.2d 458. This language implicitly relies on the merger doctrine as a justification for dismissing the trafficking counts. The merger doctrine is a statutory interpretation tool "used to determine whether the Legislature intended to impose multiple punishments for a single act which violates several statutory provisions." State v. Vladovic, 99 Wash.2d 413, 419 n. 2, 662 P.2d 853 (1983) (citing Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).
The merger doctrine is inapplicable to this case on procedural grounds: The doctrine arises only when a defendant has been found guilty of multiple charges, and the court then asks if the Legislature intended only one punishment for the multiple convictions. The doctrine does not prevent the State from charging a defendant with multiple crimes, even when those crimes may merge. The question of merger arises only after the State has successfully obtained guilty verdicts on the charges that allegedly mergeif the jury acquits on one of the charges, the merger issue never arises. The court cannot use the merger doctrine to dismiss a charge prior to trial because the court cannot predict which charges on which the defendant will be convicted.
Third Issue: Can dismissal of the amended counts be sustained under CrR 8.3(b)?
Neither of the parties' briefs filed with this court discuss CrR 8.3(b). This court is not precluded from considering the issue:
If the Supreme Court reverses a decision of the Court of Appeals that did not consider all of the issues raised which might support that decision, the Supreme Court will either consider and decide those issues or remand the case to the Court of Appeals to decide those issues.
RAP 13.7(b). The parties argued the CrR 8.3(b) issue to the trial court and the Court of Appeals, but the Court of Appeals majority failed to address CrR 8.3(b). The dissenting opinion from the Court of Appeals held CrR 8.3(b) did not authorize dismissal of any charges in this case. Because the Court of Appeals majority failed to consider the CrR 8.3(b) issue, we now examine whether CrR 8.3(b) supports the trial court's dismissal of the amended charges.
When the trial court dismissed the four amended counts in 1993, CrR 8.3(b) stated:
The court on its own motion in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution and shall set forth its reasons in a written order.
The rule was amended in 1995, but the language added is insubstantial in that it merely reflects preexisting common law requirements for dismissing charges.
Two things must be shown before a court can require dismissal of charges under CrR 8.3(b). First, a defendant must show arbitrary action or governmental misconduct. State v. Blackwell, 120 Wash.2d 822, 831, 845 P.2d 1017 (1993) (citing State v. Lewis, 115 Wash.2d 294, 298, 797 P.2d 1141 (1990)). Governmental misconduct, however, "need not be of an evil or dishonest nature; simple mismanagement is sufficient." Blackwell, 120 Wash.2d at 831, 845 P.2d 1017 (emphasis added). Absent a showing of arbitrary action or governmental misconduct, a trial court cannot dismiss charges under CrR 8.3(b):
We repeat and emphasize that CrR 8.3(b) "is designed to protect against arbitrary action or governmental misconduct and not to grant courts the authority to *593 substitute their judgment for that of the prosecutor."
State v. Cantrell, 111 Wash.2d 385, 390, 758 P.2d 1 (1988) (quoting State v. Starrish, 86 Wash.2d 200, 205, 544 P.2d 1 (1975)).
The second necessary element a defendant must show before a trial court can dismiss charges under CrR 8.3(b) is prejudice affecting the defendant's right to a fair trial. See State v. Cannon, 130 Wash.2d 313, 328, 922 P.2d 1293 (1996). Such prejudice includes the right to a speedy trial and the "right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense...." State v. Price, 94 Wash.2d 810, 814, 620 P.2d 994 (1980).
A trial court's power to dismiss charges is reviewable under the manifest abuse of discretion standard. See State v. Warner, 125 Wash.2d 876, 882, 889 P.2d 479 (1995). "Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons." Blackwell, 120 Wash.2d at 830, 845 P.2d 1017.
Our review of the trial court's order in this case is hampered by the trial court's failure to set forth in its written order detailed reasons for dismissing the amended charges. The trial court's written order states under the "FINDING" section:
After reviewing the case record to date, and the basis for the motion, the court finds that: Good cause exists. After hearing the court finds: The ends of justice will be met by dismissing counts II, III, IV, V[.]
Clerk's Papers at 23. Although the written order does not explicitly cite CrR 8.3(b), the court's use of the phrase "The ends of justice will be met ...." reflects the rule's authorization of dismissal "in the furtherance of justice." The trial court also indicated in its oral opinion that dismissal was warranted under CrR 8.3(b). Report of Proceedings at 26-28.
The court's oral opinion clearly invokes CrR 8.3(b), but the opinion is somewhat ambiguous as to the reasons behind the court's dismissal of the amended charges. Chief Judge Sweeney was correct in his partial dissent when he observed the court's decision appears to rest, at least in part, on the following reasons:
1. Trafficking charges are not filed on a regular basis every time a theft charge is filed. The trafficking here was to facilitate the pawning of the items.
2. The gun, fish-finder and scanner were left in a vacated residence. "[I]t isn't as if [Joseph R.] Michielli went out, went to somebody's home and stole this property."
3. Mr. Michielli "got himself painted into this corner with regard to not wishing to plead guilty to the original charge of second-degree theft which simply involved the weapon. Now [he's] got all these other charges facing him."
4. All the property was returned to the owner.
5. The pawn company has been paid off.
6. "Mr. Michielli should be given the opportunity to rethink his original misguided position on what his criminal culpability is for finding some rather expensive items in somebody's house and proceeding to pawn them...."
Michielli, 81 Wash.App. at 779-80, 916 P.2d 458 (Sweeney, C.J., dissenting in part). The dissent felt those reasons did not satisfy the CrR 8.3(b) requirements for dismissing the charges.
In finding the dismissal of charges was improper, the dissent gave too much weight to the trial court's ambiguous oral statements. An appellate court's review of a lower court's decision should not be limited to the trial court's oral statements. In State v. Dailey, 93 Wash.2d 454, 610 P.2d 357 (1980), we cautioned against relying on a trial court's oral statements.
Despite earlier oral statements made by the trial court, its formal written decisions clearly indicate the court dismissed the criminal prosecution "in the furtherance of justice" pursuant to CrR 8.3(b). We have previously stated that a trial court's oral statements are "no more than a verbal expression of [its] informal opinion at that time ... necessarily subject to further *594 study and consideration, and may be altered, modified, or completely abandoned." Ferree v. Doric Co., 62 Wash.2d 561, 567, 383 P.2d 900 (1963). Even a trial court's oral decision has no binding or final effect unless it is formally incorporated into findings of fact, conclusions of law, and judgment. Ferree v. Doric Co., supra at 567[, 383 P.2d 900]; Clifford v. State, 20 Wash.2d 527, 148 P.2d 302 (1944); Seidler v. Hansen, 14 Wash.App. 915, 547 P.2d 917 (1976). The written decision of a trial court is considered the court's "ultimate understanding" of the issue presented. Diel v. Beekman, 7 Wash.App. 139, 499 P.2d 37 (1972).
Dailey, 93 Wash.2d at 458-59, 610 P.2d 357. Some of the reasons cited by the trial court in its oral opinion may not have been sufficient grounds for dismissal under CrR 8.3(b), but we have no way of knowing whether those oral statements served as the entire basis for the court's written order dismissing the charges.
Even if the trial court based its dismissal of the charges on the inappropriate grounds cited by Chief Judge Sweeney, this court can still affirm the lower court's judgment on any ground within the pleadings and proof. Tropiano v. City of Tacoma, 105 Wash.2d 873, 876, 718 P.2d 801 (1986) (citing Ertman v. Olympia, 95 Wash.2d 105, 108, 621 P.2d 724 (1980)); see also Hoflin v. City of Ocean Shores, 121 Wash.2d 113, 134, 847 P.2d 428 (1993) (affirming the trial court's reaching the right result, even though the trial court arrived at that result for the wrong reasons); State v. Hudson, 79 Wash.App. 193, 900 P.2d 1130 (1995) (appellate court may affirm the trial court on any alternative theory argued to the trial court), aff'd, 130 Wash.2d 48, 921 P.2d 538 (1996). If we find Defendant raised and proved sufficient grounds for a CrR 8.3(b) dismissal, we must then affirm the trial court's dismissal of the charges.
A brief review of the pleadings and the record before the court shows Defendant successfully supported his CrR 8.3(b) claim. Defendant proved the two elements which must be shown for a court to dismiss charges.
Defendant failed to convince the trial court that the prosecutor's late amendment of the charges was due to prosecutorial vindictiveness. However, simple governmental mismanagement satisfies the "misconduct" element. Blackwell, 120 Wash.2d at 831, 845 P.2d 1017. The facts of this case demonstrate governmental mismanagement.
When the prosecutor filed the initial district court complaint in May 1993, the complaint was accompanied by a probable cause affidavit. The affidavit, dated May 12, 1993, describes the entire circumstances of Defendant's alleged theft and pawning of the items. The original information, containing just the theft charge for taking the rifle, was filed in superior court on July 9, 1993. The information was amended to include four additional charges on October 27, 1993, five days before the trial was scheduled to begin. These four charges, added over three and one-half months after the initial information was filed, are based entirely on Defendant's acts fully described in the May 12, 1993, summary of facts. The State expressly admitted to the trial court that it possessed all of the information necessary to file all of the charges when it filed the initial information:
In this case, the State did not seek additional investigation, change the [probable cause] affidavit, obtain more discovery, add witnesses nor anything else that expanded the scope of the information in possession of the defendant at the time he decided he wanted to go to trial.
Clerk's Papers at 19. Despite this, the State filed only one theft charge in July and delayed over three months before adding the four other charges, just five days before trial was scheduled to begin. These facts strongly suggest that the prosecutor's delay in adding the extra charges was done to harass Defendant. There appears to be no other reasonable explanation for why the prosecutor waited until five days before trial to add the new charges, when the prosecutor admittedly possessed all the information and evidence to support those charges in July 1993, if not earlier.
A deputy prosecutor submitted an affidavit in which he states, "Having been informed *595 that this case absolutely would be going to trial I made a tactical decision regarding what charges would have the best chance of success in front of a jury." Clerk's Papers at 20. However, the State knew as of September 2, 1993, that Defendant desired a trial. Nonetheless, the State delayed eight more weeks before adding the four charges for which the State had long possessed all the evidence. The long delay, without any justifiable explanation, suggests less than honorable motives.
Normally, the court may permit the State to amend the information any time before a verdict if such amendment does not prejudice the substantial rights of the defendant. CrR 2.1(d). Such prejudice is present in this case, thereby warranting a CrR 8.3(b) dismissal.
Defendant was prejudiced in that he was forced to waive his speedy trial right and ask for a continuance to prepare for the surprise charges brought three business days before the scheduled trial. Defendant had been arraigned on September 2, 1993. The latest date Defendant could have been brought to trial without violating CrR 3.3(c)(1) is November 30, 1993. The prosecutor delayed adding four serious charges until three business days before the trial without any justification, thereby giving Defendant the choice of going to trial unprepared, or waiving his right to a speedy trial and asking for a continuance. The facts of this case fit the scenario mentioned in State v. Cannon, 130 Wash.2d 313, 328-29, 922 P.2d 1293 (1996):
Cannon, citing State v. Price, 94 Wash.2d 810, 620 P.2d 994 (1980), contends that he suffered prejudice by being forced to choose between his right to a speedy trial and his right to effective assistance of counsel.... In that case, the court held that in order to show prejudice justifying dismissal, the defendant must establish "by a preponderance of the evidence that interjection of new facts into the case when the State has not acted with due diligence will compel him to choose between prejudicing either of these rights." Price, 94 Wash.2d at 814[, 620 P.2d 994].
The State, by adding four new charges just before the scheduled trial date, without any justification for the delay in amending the information, forced Mr. Michielli either to go to trial unprepared, or give up his speedy trial right. See also State v. Sulgrove, 19 Wash.App. 860, 578 P.2d 74 (1978) (charge dismissed under CrR 8.3(b) after the State charged the wrong crime, amended to correct it the day before trial after defense motioned for dismissal, and then failed to produce necessary evidence to support the correct charge on the day of trial).
Defendant's being forced to waive his speedy trial right is not a trivial event. This court, "as a matter of public policy[,] has chosen to establish speedy trial time limits by court rule and to provide that failure to comply therewith requires dismissal of the charge with prejudice." State v. Duggins, 68 Wash.App. 396, 399-400, 844 P.2d 441 (1993). The State's delay in amending the charges, coupled with the fact that the delay forced Defendant to waive his speedy trial right in order to prepare a defense, can reasonably be considered mismanagement and prejudice sufficient to satisfy CrR 8.3(b).
The State argued to the trial court that prosecutors have "almost unfettered discretion to charge those things that it thinks it can prove." Clerk's Papers at 18. Although prosecutors are allowed much discretion, CrR 8.3(b) exists "to see that one charged with crime is fairly treated." State v. Whitney, 96 Wash.2d 578, 580, 637 P.2d 956 (1981) (emphasis added). In this case the State expressly admits that it had all of the information and evidence necessary to file all of the charges in July 1993. Despite this, the State delayed bringing the most serious of those charges for months, and did so only five days (three business days) before the scheduled trial. Even though the resulting prejudice to Defendant's speedy trial right may not have been extreme, the State's dealing with Defendant would appear unfair to any reasonable person.
Given the facts surrounding the State's amendment of charges against Defendant, we find Defendant has supported his CrR 8.3(b) motion to dismiss the amended charges. We affirm the trial court's dismissal of those *596 charges in the furtherance of justice pursuant to CrR 8.3(b).
DURHAM, C.J., and SMITH, MADSEN and SANDERS, JJ., concur.
ALEXANDER, Justice (concurring in part, dissenting in part).
I agree with the majority insofar as it concludes that the Court of Appeals erred in concluding that a defendant who steals property and later sells it cannot be charged with trafficking in stolen property. I also agree with its determination that the Court of Appeals incorrectly determined that the merger doctrine could be employed prior to trial. Where I part company with the majority is with its conclusion that the trial court's dismissal of the trafficking counts should be upheld under CrR 8.3(b), an "extraordinary remedy" not addressed by the majority of the Court of Appeals in its decision. See State v. Blackwell, 120 Wash.2d 822, 830, 845 P.2d 1017 (1993) (dismissal of charges under CrR 8.3(b) is an extraordinary remedy available only when the accused's right to a fair trial has been materially affected).
The principal reason for my disagreement with the majority is that this court is essentially acting as the trial court in sustaining the trial court's order of dismissal. The trial court did not, as the majority notes, make the required finding of facts necessary to support a CrR 8.3(b) dismissal.[1] Indeed, the trial court's written order did not even contain any reference to CrR 8.3(b). The most that can be said in that regard is that the trial court remarked from the bench that it was requested to "take a look at this case from the standpoint of CR [sic] 8.3." Verbatim Report of Proceedings at 26. In its order dismissing the charges, however, it simply concluded that "[t]he ends of justice will be met" by the dismissal. Clerk's Papers at 27. It seems obvious to me, as it did to the dissenting judge at the Court of Appeals, that the trial court's reasons for dismissing the charges had nothing to do with governmental misconduct or arbitrary action by the prosecutor but, rather, feelings of sympathy for the defendant's plight. Those reasons do not support a dismissal under CrR 8.3(b).
In spite of the fact that the trial court did not indicate that it was relying on CrR 8.3(b) and that the reason it gave for its order do not support a CrR 8.3(b) dismissal, this court upholds the dismissal under that rule. In doing so, it concludes that the facts "strongly suggest that the prosecutor's delay in adding the extra charges was done to harass Defendant" and that "[t]he long delay [in filing the additional charges], without any justifiable explanation, suggests less than honorable motives." Majority op. at 594, 595. In my view, it is totally inappropriate for this court to hold that the "Defendant proved the two elements which must be shown" in order to justify a CrR 8.3(b) dismissal, i.e., arbitrary action or misconduct by the government and prejudice affecting the defendant's right to a fair trial. Majority op. at 594. The majority can only reach such a conclusion, in the absence of findings by the trial court, by making its own findings based on a review of the pleadings in the file. We should not make factual findings in any case, much less on this scanty record.
In short, there is no basis for the majority's remarkable conclusions that the prosecutor's delay in adding the extra charges was done to harass the defendant and that there is no other reasonable explanation for why the prosecutor waited until five days before trial to add additional charges. Indeed, the majority's conclusion flies in the face of the trial court's oral statement that it was not concluding that the State was "vindictive in this case." Verbatim Report of Proceedings at 29. While one can speculate that the prosecutor delayed in adding the additional charges in order to harass the defendant, one can just as easily speculate that there were other reasons for the delay. Absent findings of fact or a stipulation as to facts, this court has no basis for concluding that the filing was delayed to harass or vex the defendant. While I would not be offended by a remand to the trial court for findings on the CrR *597 8.3(b) motion, I strongly oppose affirming a dismissal under that rule on the record we have before us. I dissent.
TALMADGE, JOHNSON and GUY, JJ., concur.
NOTES
[1] CrR 8.3(b) requires the trial court to "set forth its reasons in a written order" when dismissing a case pursuant to that rule.