FILED
COURT OF APPEALS
DIVISION II

2013 DEC -3 AM 9: 21

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42902-1-II |
| Respondent, | Consolidated with |
| v. | No. 43292-7-II |
| STACI LEA ALLISON, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Staci Allison appeals her convictions of first degree theft and money laundering. Allison claims that (1) the trial court erred in not dismissing the case because of prosecutorial mismanagement and (2) the money laundering statute, RCW 9A.83.020, is unconstitutional because it encompasses more than one subject. She also claims that the sentencing court imposed restitution for losses not causally connected to her charged crimes. We affirm.

## FACTS

*Background*

Allison worked for the Clallam County Sheriff's Office as a records specialist assigned to the evidence room.[1] Only three people had access to the evidence room: Allison, her supervisor Chris James, and James's supervisor Alice Hoffman.

---

[1] According to Chief Civil Deputy Alice Hoffman, "the records specialist assigned to the evidence room had full management responsibilities and authority over everything to do with that room." Report of Proceedings (Oct. 18, 2011) at 48.

On November 27, 2006, James was looking for the keys to an impounded car. When she could not find the keys on the keyboard in the evidence room, James began looking through the office and was upset by the disorganization. At one point she picked up a blue tub or bin of currency envelopes and money fell out of an envelope that should have been sealed. When it became clear that money was missing, the sheriff's office contacted the Washington State Patrol (WSP) to investigate.

Lead WSP Detective Steven Stockwell later testified that he investigated all of the open currency envelopes in the blue tub and found that $51,905.33 was missing. Stockwell learned from Hoffman that unauthorized database deletions had been made to the WSP's "AEGIS" system. He checked the security logs, which showed that Allison was present on the day and during those times that the database records were deleted. He also noted that neither Hoffman nor James was present in the evidence room during the times the database records were deleted.

Federal Bureau of Investigation Special Agent Patrick Gahan performed a financial analysis of Allison's records. He examined those records for a 50-month period, which began five months prior to Allison's employment with the sheriff's office. According to Gahan's findings, Allison had a negative bank account balance at the end of two thirds of the 50 months, incurred an average of eight overdraft charges per month, and consistently took out "payday" loans to cover her expenses. However, there were no payday loans for the period from May 2003 until May 2006. During this period, Allison deposited about $9,000 that was not attributable to any income source. Gahan noted that during this same period Allison took three trips to Seoul, South Korea, and one trip to Disneyland, but had no transactions associated with these trips. He also reported that Allison's then-boyfriend reported that Allison had reimbursed him for the trips with cash.

2

The sheriff's office relied on the AEGIS computer system to track the evidence from the time it came into the sheriff's office until the time it was disposed of or returned to its owner. According to the AEGIS log files, Allison had deleted 49 entries despite a rule that no entries ever were to be deleted. In fact, deleting such records violated state law. Further, Allison deleted those records one day before a scheduled state audit. Hoffman later explained that the deleted records would not have appeared on the auditor's list and, consequently, the auditor would not have known to check them.

The State charged Allison with first degree theft and money laundering.

*Procedural History*

Trial was scheduled for September 13, 2010. During initial discovery the State produced about 1,800 pages of documents. In that material, defense counsel found pages 8 and 927 of a diary Allison kept at work detailing procedural problems. Defense counsel requested that the State produce the entire diary on August 4, 2010, and the State provided it on August 12, 2010. At the same time, the State produced another 800 pages of discovery that it had possessed but not given to the defense.

On September 10, 2010, the State sent defense counsel an e-mail explaining that it had discovered another box containing a summary of the state audit and another 1,000 pages of new discovery. On the first day of the scheduled trial, the State gave that summary to defense counsel, agreed to provide the supporting materials as soon as she got them, and revealed that WSP Detective Don Kelly had helped clean up the evidence room after the WSP audit and discovered unaccounted for cash.

Allison made a motion under CrR 8.3 to dismiss based on government mismanagement. The trial court denied the motion until the parties could examine the new material and continued the trial to October 11, 2010. This new date was within the October 13 time for trial deadline.

On October 1, 2010, defense counsel requested a continuance because he was still cross indexing the 1,000 pages of WSP support materials and because he had not yet received Don Kelly's formal report. He also requested enough time to file a brief in support of his motion to dismiss and file a motion to disqualify the prosecutor handling the case because Don Kelly was her husband.

On January 13, 2011, the trial court requested additional briefing on the motion to dismiss and reset the trial date for February 14, 2011. On January 27, 2011, the trial court issued a memorandum opinion denying the motion to dismiss, ruling, in part:

> It is frustrating to this court and no doubt to the parties that discovery which should have been disclosed early on was not. Unlike [Sherman][2] however, it does not appear that there was any willful intent or malfeasance involved in the materials not being discovered. It is clear that there is misfeasance on the part of law enforcement, and, perhaps mismanagement by the Prosecuting Attorney's office for not determining at an earlier date that not all likely discovery was available. Nevertheless this is a complex case involving thousands of documents of discovery (or so the Court has been told), a great deal of forensic accounting and performance auditing. There have been numerous continuances of the trial. Some necessitated by the Defendant's difficulty in obtaining counsel, others necessitated by the nature of the case, and occasionally by defense counsel's illness. The State objected only to the last continuance requested and either did not object or agreed to the others to accommodate the defense. The reset on the day of trial was within speedy trial limits. The executive summary contained the gist of the relevant testimony. Defense then requested additional time which was granted. This Court is granted some discretion in making a determination. Under the totality of the circumstances the Court does not feel that a dismissal of the case is warranted. While the facts causing the delay in the case are unfortunate, the Court does not find them so egregious as to warrant the extraordinary remedy

---

[2] *State v. Sherman*, 59 Wn. App. 763, 801 P. 2d 274 (1990).

4

of dismissal. A trial on the merits by fully prepared counsel can resolve significant issues of prejudice to the fact finding function. Accordingly the Motion to Dismiss on the basis of the late discovery is denied.

Suppl. Clerk's Papers at 50-51.

On February 1, 2011, the trial court found no evidence that a genuine conflict existed and denied the motion to disqualify the prosecuting attorney. Nonetheless, a different attorney assumed responsibility for the case. On September 15, 2011, the State filed an amended information additionally charging the theft as a major economic offense, justifying an exceptional sentence.

*Trial and Restitution*

A four-day jury trial began on October 17, 2011. Allison testified that she deleted the AEGIS records at James's behest because they were testing the system. She also explained that she stopped taking out payday loans because she and her ex-husband were sharing a home and expenses at that time. Regarding the trips to South Korea and Disneyland, Allison explained that her then-boyfriend had paid for the trips and she otherwise would not have been able to go.

The jury found Allison guilty as charged and found that the first degree theft was a major economic offense. The sentencing court imposed an exceptional 36-month sentence and, following a restitution hearing, ordered Allison to pay $51,905.30 in restitution, the full amount of money the WSP audit determined was missing.

ANALYSIS

A. PROSECUTORIAL MISMANAGEMENT

Allison contends that the trial court abused its discretion in denying her motion to dismiss under CrR 8.3(b) for prosecutorial mismanagement. She argues that the State's late disclosures of voluminous documentary evidence forced her to request a postponement to enable counsel to

get up to speed, which forced her to make a choice between her right to a speedy trial and her right to the effective assistance of counsel. We disagree that the trial court abused its discretion in denying the motion to dismiss.

CrR 8.3(b) states:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

Before a trial court may dismiss charges under CrR 8.3(b), the defendant must show by a preponderance of the evidence (1) arbitrary action or governmental misconduct and (2) prejudice affecting the defendant's right to a fair trial. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). The governmental misconduct need not be evil or dishonest; simple mismanagement is sufficient. *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993). And, the defendant must show actual prejudice, not merely speculative prejudice affecting his right to a fair trial. *Rorich*, 149 Wn.2d at 657. Dismissing charges under CrR 8.3(b) is an " 'extraordinary remedy.' " *State v. Rohrich*, 149 Wn.2d at 658 (quoting *State v. Baker*, 78 Wn.2d 327, 332, 474 P.2d 254 (1970)). It is limited to those " 'truly egregious cases of mismanagement or misconduct.' " *State v. Wilson*, 149 Wn.2d 1, 9, 65 P.3d 657 (2003) (quoting *State v. Duggins,* 68 Wn. App. 396, 401, 844 P.2d 441, *aff'd*, 121 Wn.2d 524, 852 P.2d 294 (1993)). The trial court should resort to dismissal under CrR 8.3(b) "only as a last resort." *Wilson*, 149 Wn.2d at 12. We review the trial court's decision denying a motion to dismiss under CrR 8.3 for an abuse of discretion, which it is when the decision was manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997); *Blackwell*, 120 Wn.2d at 830.

Here we find no abuse of discretion. First, the record reflects that there was no "gamesmanship" involved in the State's delayed production of documents. Instead, the prosecutor worked diligently to locate further discovery that was beneficial to Allison. In fact, the prosecutor pursued discoverable materials even after being told none existed. In *Wilson*, our Supreme Court found no governmental misconduct when the prosecutor acted diligently to set up last-minute witness interviews and there was no evidence of unfair gamesmanship. 149 Wn.2d at 10-11. By contrast, the facts here are unlike in *Michielli*, where the prosecutor waited until five days before trial before adding new charges without an explanation or justification. 132 Wn.2d at 243-44.

Second, as the trial court noted, this was a complicated case involving thousands of pages of documents and forensic analysis. Although the delays in producing documents were unfortunate, there is no indication of any egregious conduct that caused the delays. This case is unlike *State v. Brooks*, where this court upheld the trial court's dismissal because of "severe governmental mismanagement." 149 Wn. App. 373, 393, 203 P.3d 397 (2009). There, the State failed to timely provide extensive material information, including the 60-page victim's statement, the defendant's statement to the police, the lead detective's report, the entire police file, witness lists and statements, and multiple other documents routinely produced in discovery. *Brooks*, 149 Wn. App. at 376, 386-87.

Whether to dismiss charges based on prosecutorial mismanagement under CrR 8.3(a) rests in the trial court's discretion. Based on the record before us and the abuse of discretion standard of review, we cannot find that the trial court's decision to allow the trial to continue was manifestly unreasonable.

B.   CONSTITUTIONALITY OF MONEY LAUNDERING STATUTE

Allison argues that the money laundering statute, RCW 9A.83.020, is unconstitutional because the legislature violated the "single subject" rule established in article II, section 19 of the Washington State Constitution. She argues that the same act creating the money laundering offense also reenacted and amended RCW 69.50.505, which governs the seizure and forfeiture of personal, real, and intangible property associated with the drug trade. She concludes that the legislation enacted two subjects by creating a criminal offense and a means for civil forfeiture. We disagree.

Article II, section 19 of our constitution provides, "No bill shall embrace more than one subject, and that shall be expressed in the title." "The single-subject rule aims to prevent the grouping of incompatible measures and to prevent 'logrolling,' which occurs when a measure is drafted such that a legislator or voter may be required to vote for something of which he or she disapproves in order to secure approval of an unrelated law." *Wash. Ass'n for Substance Abuse and Violence Prevention v. State*, 174 Wn.2d 642, 655, 278 P.3d 632 (2012) (citing *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 212, 11 P.3d 762 (2000), 27 P.3d 608 (2001); *Wash. Fed'n of State Emps. v. State*, 127 Wn.2d 544, 552, 901 P.2d 1028 (1995)). We construe this provision liberally in favor of the legislation. *Amalgamated Transit*, 142 Wn.2d at 206.

The 1992 legislative act is titled, "Money Laundering" and therefore is a general, not a restrictive title. LAWS OF 1992, ch. 210, at 946; *see Wash. Ass'n*, 174 Wn.2d at 655 (discussing general and restrictive titles). When a title is general, the legislation is constitutional if there is some " 'rational unity' " between the general subject and the incidental subdivisions. *Wash. Ass'n*, 174 Wn.2d at 656 (internal quotation marks omitted) (quoting *State v. Grisby*, 97 Wn.2d

8

493, 498, 647 P.2d 6 (1982)). Rational unity exists when matters within the body are germane to the title and the provisions are germane to one another. *Wash. Ass'n*, 174 Wn.2d at 656.

Allison fails to overcome the presumption that this legislation is constitutional. Section 1 of the act contains definitions, section 2 defines the elements of the crime of money laundering, section 3 provides the procedure for seizing and forfeiting the proceeds of the criminal offense, section 4 protects officials from liability for lawfully enforcing the chapter, section 5 defines what is subject to seizure and forfeiture, section 6 provides further definitions, and section 7 explains that the new provisions (sections 1 through 4) will be codified in Title 9A RCW. All of these provisions related to the money laundering title, and all of the provisions are germane to one another. The enactment is not unconstitutional. Allison's claim fails.

C.    RESTITUTION

Allison contends that the sentencing court abused its discretion by imposing $51,905.33 in restitution when the evidence at trial connected her activity to only $9,800 in losses. She argues that two others also had access to the evidence room, the State did not show significant changes in her lifestyle, it presented evidence of only $9,000 in unexplained deposits, and the lax procedural safeguards governing the evidence room undermined the State's claim that she was solely responsible for the losses. We disagree.

RCW 9.94A.753(3) provides that a sentencing court may impose restitution following a criminal conviction that is "based on easily ascertainable damages." This statute allows broad discretion ranging from "none (in some extraordinary circumstances) up to double the offender's gain or the victim's loss." *State v. Kinneman*, 155 Wn.2d 272, 282, 119 P.3d 350 (2005). The State need not prove the damages with certainty and it need only prove them by a preponderance of the evidence. *State v. Tobin*, 132 Wn. App. 161, 173-74, 130 P.3d 426 (2006), *aff'd*, 161

Wn.2d 517, 166 P.3d 1167 (2007). It must also prove that the losses are causally connected to the crime charged. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). We review a sentencing court's decision setting restitution for an abuse of discretion. *Tobin*, 132 Wn. App. at 173.

There was no abuse of discretion here. The WSP audit of the items in the blue tub next to Allison's workstation found that $51,905.33 was missing. The evidence showed that Allison was the primary custodian of the evidence room. The evidence also showed that Allison deleted 49 records from the computer system the day before the state audit. Of these 49 deleted records, 16 related to items in the blue tub, totaling $9,802.19. And while the evidence only showed about $9,000 in unexplained deposits to Allison's bank account, there also was evidence that she travelled to South Korea three times and to Disneyland without expense and for two years stopped relying on payday loans to pay her basic living expenses. Under these circumstances, we cannot say that the sentencing court abused its discretion in finding a causal link between the criminal activity and the damages and in imposing the entire loss as restitution.

No. 42902-1-II, consolidated with No.432927-II

We affirm Allison's conviction and the trial court's restitution order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

PENOYAR, P.J.

SCHINDLER, J.

11