# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 72714-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JEREMIAH JOHNSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 9, 2015 |
| | ) | |

LAU, J. — Jeremiah Johnson appeals his conviction for one count of residential burglary. He challenges the admission of cell phone records. In the same criminal proceeding, the trial court invalidated an initial search warrant for cell phone records due to lack of probable cause. It later found probable cause to search the same cell phone records based on a new search warrant affidavit. Under these circumstances, the doctrine of collateral estoppel did not preclude the State from obtaining a second warrant and the court's ruling on the validity of the first warrant did not control its later decision to authorize a second warrant. The court did not abuse its discretion in denying Johnson's motion to dismiss or exclude evidence based on governmental mismanagement. We affirm.

FACTS

On the afternoon of January 14, 2014, a burglary occurred at Joanne Sherman's home in Stanwood, Washington. Police arrested Jerimiah Johnson and William Dixon shortly after the burglary near Sherman's home. Johnson and Dixon were in Dixon's truck that contained a pry bar used to forcibly open Sherman's back door and most of the property reported as stolen from her home. When the police detained them, Dixon and Johnson explained that they were driving around the area because they were looking for the home of a friend named John from whom they planned to buy a television. Johnson provided a statement to the police and reported that because of "horrible" cellular service and being unfamiliar with the area, he and Dixon were lost and unable to find John's house. Report of Proceedings (RP) (Sep. 29, 2014) at 130. Johnson also told one of the officers that there were messages on his cell phone that would support his explanation about why he and Dixon were in the area.

The State charged Johnson and Dixon with residential burglary. A few months before the scheduled trial date, the State executed a search warrant on Johnson's cell phone. The State obtained cell phone records from that search and provided those records to the defense.

Dixon pleaded guilty to the burglary, while Johnson proceeded to trial. Just before trial, Johnson moved to suppress the cell phone records, arguing that the search warrant affidavit did not establish probable cause to search. The search warrant affidavit related many of the facts and circumstances surrounding the arrest and underlying burglary charge, but did not mention cell phones apart from the fact that the police seized a cell phone Johnson was carrying when they arrested him.

On the trial date, the trial court heard argument and granted the motion to suppress. The court determined that the search warrant affidavit failed to provide a sufficient nexus between Johnson's cell phone and the crime and, accordingly, failed to establish probable cause to search the cell phone. The court observed that the suppression of the cell phone records was an "unfortunate" result because it appeared from the State's briefing that there was additional information about cell phone usage that, if included in the affidavit, would have established probable cause to search. RP (Sep. 26, 2014) at 9.

During the trial, the State obtained a second warrant to search Johnson's cell phone based on a newly prepared search warrant affidavit.[1] The court rejected the defense's position that collateral estoppel prohibited the State from obtaining a new search warrant and therefore, the evidence obtained pursuant to the new warrant was inadmissible. The court determined that the State was not legally barred from securing a new warrant. The court later denied a defense motion to dismiss the charge, or alternatively to exclude evidence based on the records, because of government mismanagement. Because the search was anticipated to produce duplicates of the records already provided to the defense, the court noted that there was "[no] prejudice whatsoever" to Johnson. RP (Sep. 30, 2014) at 260.

Through the testimony of a computer forensics detective, the State presented evidence at trial of several text messages and cell phone calls between Dixon and Johnson, beginning with a text message from Johnson to Dixon the night before the

---

[1] The trial judge, who determined the first warrant to be invalid, signed the second warrant during the first morning recess on the first day of trial.

burglary stating, "What's up? Should we hit this lick after work? I got some plates on my jeep."[2] RP (Oct. 1, 2014) at 318. According to the records, there were also several cell phone calls between Johnson and Dixon on the morning of the burglary and a text message from Johnson to his brother asking if he knew anyone who "needs to be robbed?" RP (Oct. 1, 2014) at 320. The records also showed that Johnson made a brief call to his brother after the police stopped Dixon's truck. Following this call, there were text messages between Johnson and his brother indicating that Johnson was looking for his "buddy John's house" and that Johnson's brother offered to help find the house. RP (Oct. 1, 2014) at 322.

Dixon testified pursuant to the State's subpoena. He admitted that he forcibly entered Sherman's home and, assisted by Johnson, stole property. However, Dixon maintained that Johnson did not want to be there and insisted, contrary to his statement at the time of arrest, that the burglary was solely his idea. Dixon also testified that he had known Johnson since junior high school and that he did not wish to testify.

The jury convicted Johnson as charged. He appeals.

Collateral Estoppel

Johnson challenges the admission of testimony based on the cell phone records. He did not move to suppress the evidence obtained pursuant to the second warrant, has not designated the second search warrant and supporting affidavit for the record on appeal, and does not claim that the second search warrant is unsupported by probable cause. Instead, as argued below, Johnson claims that because the initial search

---

[2] A police officer testified that "lick" is a slang term that refers to a robbery, theft, or burglary.

warrant was not supported by probable cause, the doctrine of collateral estoppel precluded the State from obtaining the records by means of a second warrant. In other words, Johnson contends that the court's decision on the validity of the first warrant was binding on any subsequent application for a warrant to search the same records.

Collateral estoppel is a judicially created doctrine designed to conserve judicial resources and provide finality to litigants. State v. Barnes, 85 Wn. App. 638, 652-53, 932 P.2d 669 (1997). It bars relitigation of an issue in a subsequent proceeding involving the same parties. Christensen v. Grant Cnty. Hosp. Dist. No. 1, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). A party asserting collateral estoppel bears the burden of proving each of the following requirements: (1) the issue decided in the prior adjudication is identical to the one presented in the second proceeding, (2) the prior adjudication ended in a final judgment on the merits, (3) the party against whom the doctrine is asserted was a party or in privity with the party to the prior adjudication, and (4) application of the doctrine does not work an injustice. Christensen, 152 Wn.2d at 307. We review de novo whether collateral estoppel applies to bar relitigation of an issue. Christensen, 152 Wn.2d at 305.

Johnson's reliance on the doctrine of collateral estoppel in this context is misplaced. The parties argue at length about whether collateral estoppel requires successive causes of action or whether a court's decision on a CrR 3.6 motion qualifies as a "prior adjudication" that resulted in a final judgment on the merits. Johnson's claim fails for the more basic reason that he cannot establish that an identical issue was previously decided.

Johnson cites State v. Longo, 185 Wn. App. 804, 343 P.3d 378 (2015), to support the position that the court previously decided an identical legal issue. But Longo differs from this case in critical respects. In that case, police officers executed a warrant to search Longo's home. Longo, 185 Wn. App. at 806. Based on evidence the police found of a sophisticated marijuana grow operation, the State charged Longo with drug crimes and the City of Bellingham initiated civil forfeiture proceedings. Longo, 185 Wn. App. at 807. In both cases, Longo moved to suppress the evidence uncovered in the search, challenging the validity of the search warrant. Longo, 185 Wn. App. at 807. The district court granted the motion and dismissed the forfeiture case. Longo, 185 Wn. App. at 807. Longo then moved to dismiss the criminal charges, arguing that the court in the criminal case was bound by the court's decision in the civil case regarding the validity of the search warrant. Longo, 185 Wn. App. at 807. The superior court granted the motion to dismiss.

This court reversed because the privity prong of collateral estoppel was not met and because application of the doctrine would lead to an unjust result. Longo, 185 Wn. App. at 809, 811-812. While the Longo court observed that the legal issue decided in the prior forfeiture adjudication was the same legal issue presented in the criminal proceeding, the issue in both proceedings was the validity of the same search warrant. Longo, 185 Wn. App. at 808. But here, the warrant the court determined to be invalid was a different warrant from the warrant that later authorized the search of the cell phone and seizure of the data. If Johnson had filed a CrR 3.6 motion challenging the validity of the second warrant, because it was a different warrant supported by a new

probable cause affidavit, the court would not have been bound by its earlier determination regarding the first warrant.

This is so notwithstanding Johnson's assertion that issues were identical because the second search warrant affidavit "alleged facts already known to the State at the time of the original warrant." Br. of Appellant at 11. As explained, the second warrant and supporting affidavit are not included in the record on appeal. We are not, therefore, in a position to evaluate the factual basis for the second warrant. But even if we assume that the only additional facts included in the second search warrant affidavit were known to law enforcement at the time of the first warrant application, it is not clear why this fact would affect the applicability of collateral estoppel. As the trial court pointed out, when a warrant application is denied in the first instance based on insufficiency of the supporting affidavit, neither collateral estoppel nor any other legal doctrine precludes the State from submitting a second warrant application with additional factual support. No compelling reason exists as to why a different result should apply when a judge or magistrate issues a warrant that is later invalidated upon review.

Contrary to Johnson's claim, the trial court's decision here is consistent with the Iowa Supreme Court's decision in State v. Seager, 571 N.W.2d 204 (Iowa 1997). In that case, the State dismissed murder charges against Seager after a court determined a 1979 search warrant to be invalid. Seager, 571 N.W.2d at 207. More than a decade later, the State obtained a second warrant, again seized a firearm, and conducted new ballistics testing. The State filed new charges. Seager, 571 N.W.2d at 207. The trial court suppressed the firearm and new ballistics test results on the basis of collateral

estoppel because the issue of admissibility was decided against the State in the prior proceeding. Seager, 571 N.W.2d at 207. The Iowa Supreme Court reversed. While the court observed that many of the facts supporting the 1993 warrant were not known to authorities in 1979, the reason that collateral estoppel did not apply was simply because the issue presented in the later case was the validity of the 1993 warrant, whereas the issue decided in the earlier proceeding was the validity of the 1979 warrant. Seager, 571 N.W.2d at 208-09. The court rejected Seagar's characterization that the issue decided in both cases was the "admissibility of the rifle." Seager, 571 N.W.2d at 208.

Likewise, here, because the issues decided by the court involved different warrants, the court correctly concluded that collateral estoppel does not apply.

Governmental Mismanagement

On the second day of the three-day trial, the defense moved to dismiss the case, or alternatively, to exclude the evidence based on cell phone records due to government mismanagement. Johnson argued that the State "dropped the ball and mismanaged this case" by failing to timely submit a sufficient search warrant affidavit. RP (Sep. 30, 2014) at 255. Johnson also maintained that he was prejudiced because, but for this error, the trial could have been completed within two days, instead of three.

The court denied the motion. The court noted that the defense had the cell phone records before trial. While the circumstances of securing a second warrant after the trial had begun were not "ideal," the trial was still "well on track" to be completed within three to four days, as the parties initially predicted. RP (Sep. 30, 2014) at 260.

Johnson contends that the court should have granted his motion to exclude evidence under the authority of CrR 8.3(b) because the State's mismanagement adversely affected his counsel's ability to prepare for trial.

CrR 8.3(b) provides:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.

In order to succeed on a CrR 8.3(b) motion, the defendant must prove both governmental misconduct and prejudice to his right to a fair trial by a preponderance of the evidence. State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). The denial of a motion made under CrR 8.3 is reviewed for abuse of discretion and will be overturned only if the trial court's decision was manifestly unreasonable or based on untenable grounds. State v. Wilson, 149 Wn.2d 1, 9, 65 P.3d 657 (2003).

Prevailing on a motion under CrR 8.3(b) requires a showing of actual prejudice; the mere possibility or speculation of prejudice will not suffice. Rohrich, 149 Wn.2d at 657-58. Such prejudice may include the right to a speedy trial and the right to be represented by counsel who has had an adequate opportunity to prepare a defense. See State v. Michielli, 132 Wn.2d 229, 240, 937 P.2d 587 (1997).

Johnson argues that the State had ample opportunity between execution of the warrant in June 2014 and the September 26, 2014 suppression hearing to review and correct the affidavit supporting the warrant and inexcusably failed to do so. Johnson analogizes to cases where the State's conduct compromised counsel's ability to prepare for trial. See State v. Sherman, 59 Wn. App. 763, 768, 801 P.2d 274 (1990) (dismissal

proper where State agreed to produce complaining witness's tax forms in the omnibus order but failed to produce them, and failed to move for reconsideration of the order until the day after trial was to have begun). He points out that while the State requested a two-week continuance in order to obtain and execute the second warrant, his counsel was not available for a later trial. Therefore, he claims he was forced to choose between his right to a speedy trial and his right to be represented by adequately prepared counsel. See Michielli, 132 Wn.2d at 240.

The chief problem with Johnson's argument is that he has made no showing, here or below, that the State's conduct compromised counsel's ability to prepare for trial. Johnson's cell phone had been in the State's custody since his January 2014 arrest. The State employed the same technology in both the June 2014 and September 2014 searches. Nothing in the record indicates that the results of the second search were not identical to the results of the first search. Johnson does not assert otherwise.

Even assuming that the omission of known facts from the search warrant affidavit amounted to mismanagement, Johnson fails to establish that the State's actions actually prejudiced his right to a fair trial. See Rohrich, 149 Wn.2d at 657-58 (dismissal under CrR 8.3(b) inappropriate where defendant was unable to show that 18-month delay in filing charges actually prejudiced his right to a fair trial). We are not persuaded that Johnson's receipt during trial of the same records he possessed and

examined before trial prejudiced his counsel's ability to prepare a defense.

We affirm.

WE CONCUR: