# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>FERNANDO ANDRES CELAYA,<br><br>                          Petitioner. | No.  55016-4-II<br><br>UNPUBLISHED OPINION |

LEE, J. — Fernando A. Celaya brought a personal restraint petition (PRP), alleging that he is being unlawfully restrained for his convictions on two counts of fourth degree assault, felony harassment, violation of a no contact order, and witness tampering.  Celaya argues that he received ineffective assistance of counsel because defense counsel failed to move for dismissal based on government misconduct when the State violated his speedy trial rights by moving to amend the information on the day of trial and when the State misstated the law in its arguments to amend the information.

We hold that Celaya did not receive ineffective assistance of counsel because Celaya has not shown that either motion would have been granted.  Therefore, we deny Celaya's PRP.

## FACTS

Fernando A. Celaya and K.J. [1] were in a romantic relationship for about two years.  *State v. Celaya*, No. 52063-0-II, slip op. at 2 (Wash. Ct. App. Apr. 7, 2020) (unpublished).[2]  Celaya and K.J. lived together with Celaya's friend Brian Pace.  *Id*.  On June 21, 2017, the State charged

---

[1]  We use initials to protect the identity of the domestic violence victim.

[2]  https://www.courts.wa.gov/opinions/pdf/D2%2052063-0-II%20Unpublished%20Opinion.pdf

Celaya with second degree assault and felony harassment after a domestic violence incident involving Celaya and K.J. the day before. *Id*. On June 22, 2017, Celaya called Pace from jail. *Id*. On two occasions, during the call, Celaya asked Pace to convince K.J. to drop the charges against him. *Id*. Celaya told Pace that if K.J. did not drop the charges, Pace should kick her out of his house. *Id*.

A.     TRIAL CONTINUANCES

The trial court set Celaya's trial date for August 8, 2017. On July 18, the trial court granted a motion to continue the trial date brought by both parties. Celaya claimed he needed "additional time to conduct investigation evaluate potential collateral issues." Clerk's Papers (CP) at 7. Further, Celaya's counsel noted a number of dates they were unavailable. The trial court continued the trial date from August 8 to October 2, 2017.

On August 18, the State provided Celaya with a list of its witnesses for trial. The State's witness list included Brien A. Pace.

On September 19, at the request of both parties, the trial court granted another trial continuance. Both parties stated, "Defense obtaining records to provide to State, State scheduling witness interviews, Defense providing witness list. Defense unavailable 9/21 to 9/26 [and] 10/11 to 10/17 [and] DPA unavailable 10/25 to 11/7." CP at 12. The trial court continued the trial to November 14, 2017. The bottom of the order was stamped, "NO MORE CONTINUANCES." CP at 12.

Also on September 19, the trial court signed an omnibus order in which the State acknowledged that it was "[a]waiting report on Jail call NCO violations if any," which had not yet

been made available to Celaya. The omnibus order also stated that Celaya still needed to "provide discovery [and] witness list to state." CP at 16.

On November 13, the trial court granted Celaya's motion to continue the trial date to December 12, 2017. Celaya told the court that he "was only recently able to interview alleged victim and still in the process of obtaining discovery defense will need to provide to the State in advance of trial." CP at 24

On December 1, the trial court granted the State's motion to continue the trial date. The State stated, "Officer Bradley (3.5) is unavailable for training 12/11 - 12/15. Officer Robillard is on vacation out of state 12/8 - 12/24. DPA Dillon on vacation 12/23 - 1/1/18." CP at 27. Celaya objected to the continuance. The trial court continued the trial date to January 17, 2018. The bottom of the order was again stamped, "NO MORE CONTINUANCES." CP at 27.

On January 5, 2018, over Celaya's objection, the trial court granted the State's motion to continue the trial date. The State stated, "Officer Bradley has out of state training 1/15 - 1/21/2018 Officer Rush is unavailable due to training 1/22 - 1/26/2018." CP at 33. The trial court continued the trial date a week to January 24, 2018. The expiration of time for trial period was set as February 23, 2018. The bottom of the order was again stamped, "NO MORE CONTINUANCES." CP at 33.

Also on January 5, the trial court entered a trial readiness order that noted, "An amended information will be filed on morning of trial to add 1 count Assault [fourth degree]/DV." CP at 28. The trial readiness order also included the State's representation that, "Officer Meagan Rush unavailable 1/22 to 1/26," and that the trial was estimated to take three to four days. CP at 29.

On January 24, over Celaya's objection, the trial court granted the State's motion to continue the trial date. The State informed the court that "DPA is assigned out on another trial." CP at 35. The trial court continued the trial date to February 8, 2018. The expiration of the time for trial period was March 10, 2018. The bottom of the order was again stamped, "NO MORE CONTINUANCES." CP at 35.

Also on January 24, Celaya filed a trial memorandum. In the memorandum, Celaya stated, "The Defense does not anticipate any further amendments of the charges." CP at 40. Celaya also estimated that the "trial should last, at most, four to five days." CP at 40. Celaya provided a witness list to the State on January 26.

On January 29, the State received a report that Pace would be able to testify regarding the phone call he received from Celaya while Celaya was in jail. VRP (Feb. 8, 2018) 11. On January 30, the State reviewed the report and sent an email to Celaya's counsel with an amended information that added charges for fourth degree assault, a presentence no contact order violation, and witness tampering. The State intended to rely on the amended information at trial.

Defense counsel saw the State's email on February 4, however, was unable to address it until counsel was back in the office on February 5. Defense counsel was not able to address the email sooner because he was out of the office for two days with pinkeye, and then another two days because his son had surgery.

On February 8, the day of trial, the State moved to amend the information to add a fourth degree assault charge, a presentence no contact order violation charge, and a witness tampering charge. The fourth degree assault arose from the same incident as the original charges, while the no contact order violation and witness tampering charges arose after Celaya was arrested for the

incident involving K.J. The State alleged the no contact order violation occurred on or about June 22, 2017, while the witness tampering occurred on or between June 20, 2017 and January 30, 2018.

Celaya "strenuously" objected to the State's attempt to amend the information on the day of trial. VRP (Feb. 8, 2018) at 4. Celaya argued that the State provided discovery for the new charges "late last week" even though the State was aware that defense counsel would be out of office. VRP (Feb. 8, 2018) at 5. Celaya also argued that the amendment prejudiced Celaya, who had been "awaiting trial for some time." VRP (Feb. 8, 2018) at 5. Further, Celaya argued that amending the information would cause the "allegations [to] substantially change . . . bring great difficulty in the defense that [Celaya] had anticipated putting forth." VRP (Feb. 8, 2018) at 8.

In response, the State argued that the new charges could not be added previously because the State was not sure whether Pace would testify as a corroborating witness, and knowing whether Pace conveyed a message from Celaya to K.J. was an essential element of the witness tampering charge. VRP (Feb. 8, 2018) 11. The State asserted that it was unable to get confirmation of Pace's cooperation until January 30, 2018, the day notice was given to Celaya about the State's plan to amend the information. The State stated that it would agree to a continuance if Celaya needed more time to prepare for trial.

When asked by the trial court why the charges had not been brought sooner, the State again stated, "I'm not going to be able to prove that witness tampering without Brian Pace and without— because he is the one that conveys the message from that call to the alleged victim." VRP (Feb. 8, 2018) at 23. The State then said that it had attempted to contact Pace as early as September 19, 2017 and had made at least nine other attempts to contact Pace before he finally returned their call at the end of January 2018. The State claimed, "I have to determine whether or not I have a

reasonable certainty of conviction at trial. That doesn't happen until I actually have that statement from Mr. Pace." VRP (Feb. 8, 2018) at 26. In response, Celaya argued that "we are bordering on prosecutorial mismanagement here." VRP (Feb. 8, 2018) at 27.

In its ruling, the trial court stated, "I don't think that the State mismanaged the case. I understand why they felt like they couldn't—they didn't have a good-faith basis to proceed on witness tampering charges." VRP (Feb. 8, 2018) at 30. The trial court repeated, "I don't think that there is any prosecutorial misconduct in the management of the case." VRP (Feb. 8, 2018) at 32. The trial court also stated, "This is when the information developed." VRP (Feb. 8, 2018) at 33. The trial court then said, "[S]ince I don't find any prosecutorial misconduct in the management of the matter or how this played out given the record that I have, I will grant the motion to amend and accept the Amended Information for filing." VRP (Feb. 8, 2018) at 35.

Celaya then moved to continue the trial. The State did not object, and the trial court granted the motion. The trial court continued the trial to February 27, 2018, and the expiration of the time for trial period was reset to March 29, 2018.

On February 27, the trial court granted Celaya's motion to continue the trial date. Celaya stated, "Defense council [sic] is in trial. Defense council [sic] on vacation 3/7/18 - 3/14/18 [and] 3/28/18 - 4/2/18." CP at 66. A new trial was set for March 19, 2018. The expiration of the time for trial period was reset to April 18, 2018. The bottom of the order was stamped, "NO MORE CONTINUANCES." CP at 66.

At a hearing on March 19, the trial court ordered a continuation of the trial date because no courtrooms were available that day. A new trial date was set for the next day on March 20, 2018.

Also at the March 19 hearing, the State informed the trial court that Celaya had stated he was preparing to make a motion, though Celaya would not tell the State what the substance of the motion would be. The State also noted that Celaya had "a large prosecutorial misconduct book." VRP (Mar. 19, 2018) at 2. The State argued that it "need[ed] to know the substance of the motion so that [it could] be prepared for the Court so that this case, which is already very old, does not get continued any further." VRP (Mar. 19, 2018) at 3. Celaya responded that based on the actions of the State, he believed the State had engaged in "prosecutorial misconduct or mismanagement" and intended on briefing the issue. VRP (Mar. 19, 2018) at 7.

On March 20, the trial court again continued the trial for a day because there were no courtrooms available. At the hearing, Celaya stated that he was not certain if he would bring a CrR 8.3 motion. Instead, he stated that he "would be looking at these issues" and would only file a motion "if [he] felt it appropriate." 2 VRP (Mar. 20, 2018) at 14.

On March 21, the trial court granted a motion for continuance from Celaya because his defense counsel had a prescheduled vacation that conflicted with the trial date. The State did not object. A new trial was set for April 12, 2018. Although the trial date could have been set sooner, Celaya asked that the trial be continued to April 12, 2018 because he preferred to have an uninterrupted trial. The bottom of the order was stamped, "NO MORE CONTINUANCES." CP at 75.

On April 4, the trial court granted the State's motion to continue the trial date. The State stated, "Officers unavailable: Megan Jones Rush 4/12 - 4/20; Ryan Bradley 4/21 - 5/10; Torvald Pearson 4/18 - 4/23; Det. Reda 5/1 - 5/3." CP at 81. A new trial was set for April 17, 2018. Celaya did not object; instead, Celaya stated, "[I]t would appear to defense counsel that it would make the

most sense to move [the trial] to the 16th or 17th." 4 VRP (Apr. 4, 2018) at 34. The bottom of the order again was stamped, "NO MORE CONTINUANCES." CP at 81.

B.      TRIAL AND JURY VERDICT

The trial started on April 17, 2018. The jury found Celaya not guilty of second degree assault but found him guilty of the lesser included crime of fourth degree assault. The jury also found Celaya guilty of an additional count of fourth degree assault, felony harassment, violation of a no contact order, and witness tampering. The jury also found that Celaya and K.J. were members of the same household for all counts.

C.      DIRECT APPEAL

Celaya appealed his convictions. *Celaya*, No. 52063-0-II, slip op. at 7. Relevant to this PRP, Celaya argued that "his convictions should be dismissed because the State committed governmental misconduct under CrR 8.3(b) that caused the trial court to violate Celaya's constitutional right to a speedy trial." *Id.* Celaya also argued that his constitutional right to a speedy trial was violated. *Id.* at 8. In a statement of additional grounds (SAG), Celaya argued, among other issues, that he received ineffective assistance of counsel. *Id.* at 10-14.

We held that because Celaya "abandoned the CrR 8.3(b) issue below, Celaya waived CrR 8.3(b) as a basis for review on appeal." *Id.* at 8. We explained, "Celaya's counsel's statements to the trial court show that he clearly recognized the existence of the issue of governmental misconduct but nevertheless decided to not bring a CrR 8.3(b) motion." *Id.* Thus, we held that "by declining to move to dismiss his charges pursuant to CrR 8.3(b) in the trial court, Celaya has waived his claim of governmental misconduct on appeal," and we declined to review Celaya's CrR 8.3(b) claim. *Id.*

8

We also declined to review Celaya's claim that his constitutional right to a speedy trial was violated because it was raised for the first time on appeal and was not a manifest error. *Id.* at 8-10. Celaya argued on appeal that the trial delays caused him prejudice because witness memories faded. *Id.* at 9. We held that Celaya failed to show how the witness' forgetfulness caused him prejudice that affected his right to a fair trial. *Id.* at 9-10.

We also determined that "[e]ven assuming Celaya's speedy trial violation was manifest . . . Celaya's claim fails at the outset." *Id.* at 10 n. 7. We stated that under the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), Celaya did not "satisfy the threshold burden of demonstrating that the delay was 'presumptively prejudicial.'" *Id.* (quoting *State v. Iniguez*, 167 Wn.2d 273, 283, 217 P.3d 768 (2009)). Thus, we held that "Celaya cannot raise nor prevail on a speedy trial violation issue raised for the first time on appeal." *Id*. We also rejected Celaya's ineffective assistance claim. *Id.* at 10-14.

Celaya now seeks relief under a PRP.

## ANALYSIS

A.    PERSONAL RESTRAINT PETITION

To prevail on a PRP alleging a constitutional violation, the defendant must prove that there was a constitutional error that resulted in actual and substantial prejudice. *In re Pers. Restraint of Williams*, 198 Wn.2d 342, 353, 496 P.3d 289 (2021). To obtain relief, the defendant must show by a preponderance of the evidence that the constitutional error caused him actual and substantial prejudice. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).

In evaluating a PRP, we may (1) deny the PRP if the defendant fails to make a prima facie showing of a constitutional or nonconstitutional error; (2) remand for a full hearing if the petitioner

makes a prima facie showing but the merits of the contentions cannot be determined solely from the record; or (3) grant the PRP without further hearing if the petitioner has proved actual prejudice or a miscarriage of justice. *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015).

B.    SPEEDY TRIAL RIGHT VIOLATION GOVERNMENTAL MISCONDUCT CLAIM, AND APPEAL

As an initial matter, the State argues that Celaya cannot raise an ineffective assistance of counsel claim based on governmental misconduct because that issue, as well as the issue of whether his right to a speedy trial was violated, was addressed in the direct appeal. The State claims that Celaya cannot recast an issue already addressed in the direct appeal as an ineffective assistance of counsel claim.

A petitioner may raise new issues on collateral attack. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004). But "[a] 'new' issue is not created merely by supporting a previous ground for relief with different factual allegations or with different legal arguments." *Id*. It is not enough for a defendant to merely recast an issue as an ineffective assistance of counsel claim; "simply recasting an argument in that manner does not create a new ground for relief or constitute good cause for reconsidering the previously rejected claim." *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001). Thus, a petitioner is barred from raising an issue that was previously raised on direct appeal if the issue was fully litigated on the merits and disposed of on direct appeal. *See In re Pers. Restraint of Knight*, 196 Wn.2d 330, 341, 473 P.3d 663 (2020). However, while a personal restraint petitioner may not renew an issue that was raised and rejected on direct appeal, review may be had if the petitioner can show that the interests of justice require relitigation of an issue "by showing an intervening change in the law 'or some other justification

for having failed to raise a crucial point or argument in the prior application.'" *Stenson*, 142 Wn.2d at 719-20 (internal quotation marks omitted) (quoting *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 388, 972 P.2d 1250 (1999)).

1.      Speedy Trial Violation Claim

Celaya argues in his PRP that his right to a speedy trial was violated as a result of governmental misconduct when the State amended the information on the day of trial. This argument was raised and decided on direct appeal, and therefore, Celaya is barred from again raising this claim by recasting it as an ineffective assistance of counsel claim in his PRP.

On direct appeal, Celaya argued that "his constitutional right to a speedy trial was violated" because the delay in trial caused witnesses' memories to fade, resulting in prejudice to him. *Celaya*, No. 52063-0-II, slip op. at 8-10. We declined to consider the alleged error on direct review because the issue was raised for the first time on appeal and Celaya failed to show the faded memories caused any prejudice that affected his right to a fair trial; thus, Celaya failed to show a manifest constitutional error. *Id*.

However, we also determined that "[e]ven assuming Celaya's alleged speedy trial violation was a manifest constitutional error and we considered the merits of his claim, Celaya's claim fails at the outset." *Id.* at 10 n.7. We went on to explain that violations of the constitutional speedy trial right are analyzed using the balancing test set forth in *Barker*. *Id*.

> [I]n order to trigger the *Barker* analysis, [Celaya] must first show "that the length of delay crossed a line from ordinary to presumptively prejudicial." [*State v. Iniguez*, 167 Wn.2d at 283.] Celaya does not satisfy the threshold burden of demonstrating that the delay was "presumptively prejudicial." *Id. . . . .* Thus, without a manifest constitutional error or a showing of presumptive prejudice, Celaya cannot raise nor prevail on a speedy trial violation issue raised for the first time on appeal.

*Id.*

Here, Celaya again raises in his PRP a challenge that his right to a speedy trial was violated. Although Ceyala now argues that his speedy trial right was violated because the State amended the information on the first day of trial, this is not a new issue. *See Davis*, 152 Wn.2d at 671. And Celaya does not justify his failure to raise his new argument nor does he show that the interests of justice require relitigation of this issue. *See Stenson*, 142 Wn.2d at 720. Therefore, Celaya is barred from again raising this issue in a PRP.

2.       Governmental Misconduct Claim

Celaya also argues in his PRP that he received ineffective assistance of counsel because his counsel failed to move to dismiss for governmental misconduct, which forced him to choose between his right to a speedy trial and his right to prepare a defense. The merits of this argument were not addressed on direct appeal.

On appeal, Celaya argued that "his convictions should be dismissed because the State committed governmental misconduct under CrR 8.3(b) that caused the trial court to violate Celaya's constitutional right to a speedy trial." *Celaya*, No. 52063-0-II, slip op. at 7. However, we did not address the merits of Celaya's argument on direct review. *Id.* at 8. Instead, we held that Celaya "waived CrR 8.3(b) as a basis for review on appeal" because he "abandoned the CrR 8.3(b) issue below." *Id.* Therefore, the issue of whether there was governmental misconduct that forced Celaya to choose between his right to a speedy trial and his right to prepare a defense was not fully litigated on the merits.

Because the merits of whether governmental misconduct forced Celaya to choose between his right to a speedy trial and his right to prepare a defense has not been fully litigated and determined, Celaya's ineffective assistance of counsel claim based on his counsel's failure to move to dismiss for governmental misconduct is not "simply recasting an argument." *Stenson*, 142 Wn.2d at 720. Therefore, we address this issue.

C.      INEFFECTIVE ASSISTANCE OF COUNSEL

Celaya argues that he received ineffective assistance of counsel because his defense counsel failed to move to dismiss his case for governmental misconduct when the State violated his speedy trial rights and misstated the law. We disagree.

1.      Legal Principles

We review claims of ineffective assistance of counsel de novo. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). To establish ineffective assistance of counsel, a defendant must show that their attorney's performance was deficient and, if it was deficient, that it was prejudicial. *Davis*, 152 Wn.2d at 672-73. An ineffective assistance of counsel claim fails if the defendant fails to establish either deficient performance or prejudice. *Id.* at 673.

Performance is deficient if counsel's representation falls below an objective standard of reasonableness based on consideration of all the circumstances. *Lui*, 188 Wn.2d at 538. There is a strong presumption that counsel's representation was effective. *Davis*, 152 Wn.2d at 673. While defense counsel has a duty to investigate all reasonable lines of defense, counsel need not pursue strategies that reasonably appear unlikely to succeed. *Davis*, 152 Wn.2d at 744-45; *State v. McFarland*, 127 Wn.2d 322, 334 n.2, 899 P.2d 1251 (1995).

The burden to establish prejudice for an ineffective assistance of counsel claim is the same in a PRP as for a direct appeal. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012). A defendant is prejudiced by their counsel's deficient performance where there is a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 840 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

"The failure to seek dismissal of the charges, where a motion to dismiss would probably be granted, constitutes ineffective assistance of counsel." *State v. Johnston*, 143 Wn. App. 1, 18, 177 P.3d 1127 (2007). However, "this court cannot find prejudice unless there is a reasonable probability that the charges would have been dismissed had trial counsel sought a dismissal." *Id.*

Dismissal under CrR 8.3(b) is an "extraordinary remedy." *See State v. Puapuaga*, 164 Wn.2d 515, 526, 192 P.3d 360 (2008). However, governmental misconduct need not be of an evil or dishonest nature to support a dismissal under CrR 8.3(b); rather, simple mismanagement is sufficient. *State v. Salgado-Mendoza*, 189 Wn.2d 420, 431, 403 P.3d 45 (2017).

2.    Failure To Move To Dismiss Based On The Late Amendment Of The Information

Celaya argues that he received ineffective assistance of counsel because the State forced him "to choose between a speedy trial and the right to prepare a defense" and counsel failed to move to dismiss the charges on the grounds that Celaya's right to a speedy trial was violated due to government misconduct. PRP at 16 (bold face omitted). We disagree.

Here, the State provided Celaya with notice that it intended to amend the information ten calendar days, or eight business days, before trial and moved to amend the information on the day

14

of trial. Although the State did not deny that it was aware of the conduct that led to the additional charges for months prior to trial, it argued that it did not have the evidence necessary to prove the additional charges until January 29, 2018, when it secured the cooperation from Pace to testify about the amended charges.[3]

The record shows that the State made multiple efforts to contact Pace. The State attempted to contact Pace as early as September 19, 2017, and made at least nine other attempts to contact Pace before he finally returned their call at the end of January 2018. The State relied on Pace's testimony to prove the witness tampering charge and also provided Pace's testimony for the no contact order violation charge, which arose from the same phone call as the witness tampering charge. Pace's testimony was used to lay the foundation for the motion to admit the taped recording of the call that Celaya made to him from jail. Pace's testimony also provided context for the phone call, during which Celaya asked Pace to threaten to kick K.J. out of the house if she did not drop the charges against him. Pace was Celaya and K.J.'s landlord and had the power to kick K.J. out of the house. Therefore, as noted by the trial court, the State's late motion to amend the information was not caused by mismanagement; rather, the State moved to amend the information "when the information developed"—after making multiple efforts to contact Pace and as soon as it knew that Pace would be able to testify. VRP (Feb. 8, 2018) at 33. Thus, given the

---

[3] At the hearing on the State's motion to amend, the State argued that Pace's testimony was needed because "an essential element to the Witness Tampering is to know whether or not [Celaya's message] was actually conveyed to [K.J.]." VRP (Feb. 8, 2018) at 11. But, as pointed out by Celaya and conceded by the State, whether the threat is conveyed to the witness is not an element of the crime and is, in fact, not necessary to prove witness tampering. *See State v. Williamson*, 131 Wn. App. 1, 6, 86 P.3d 1221 (2004) ("A person violates the witness intimidation statute even if the threat is not communicated to the victim."). However, the State now argues that it relied on Pace's testimony in other ways to prove the witness tampering charges.

facts in the record, there is no reasonable probability that the charges would have been dismissed had defense counsel sought a dismissal.

Celaya contends that he received ineffective assistance of counsel because his defense counsel had "no strategic reason not to move to dismiss." PRP at 13 (bold face omitted). In support of his contention, Celaya provided defense counsel's declaration stating he did not have a strategic reason not to move to dismiss at or after the hearing on February 8, 2018.

However, the record shows that when the State moved to amend the information on February 8, 2018, defense counsel argued, "[W]e are bordering on prosecutorial mismanagement here." VRP (Feb. 8, 2018) at 27. The trial court disagreed with defense counsel, stating, "I don't think that the State mismanaged the case." VRP (Feb. 8, 2018) at 30. The trial court later repeated this sentiment again, stating, "I don't think that there is any prosecutorial misconduct in the management of the case." VRP (Feb. 8, 2018) at 32. Therefore, defense counsel was alerted to the fact that the trial court would likely not grant a motion to dismiss for governmental mismanagement. Counsel need not pursue strategies that "reasonably appear unlikely to succeed." *Brown*, 159 Wn. App. at 371.

Further, at the March 19 hearing, the State informed the trial court that Celaya had stated he was preparing to make a motion, though Celaya would not tell the State what the substance of the motion would be. Celaya responded that based on the actions of the State, he believed that the State engaged in "prosecutorial misconduct or mismanagement" and intended on briefing the issue. VRP (Mar. 19, 2018) at 7. However, the next day, defense counsel stated that he was not certain if he would bring a CrR 8.3(b) motion. Instead, defense counsel stated that he "would be looking at these issues" and would only file a motion "if [he] felt it appropriate." 2 VRP (Mar. 20, 2018)

at 14. Defense counsel never brought a CrR 8.3(b) motion. Therefore, the record contradicts defense counsel's declaration because defense counsel clearly considered the issue and did not bring a CrR 8.3(b) motion after stating he would only bring the motion if he "felt it appropriate." 2 VRP (Mar. 20, 2018) at 14. Thus, Celaya has not shown that defense counsel's performance was deficient.

Celaya asserts that the State committed government misconduct, citing to *State v. Michielli*, 132 Wn.2d 229, 937 P.2d 587 (1997), *State v. Ralph Vernon G.*, 90 Wn. App. 16, 21, 950 P.2d 971 (1998), and *State v. Earl*, 97 Wn. App. 408, 410, 984 P.2d 427 (1999). In *Michielli*, the State amended the information to include four additional charges only five calendar days, and only three business days, before the trial was scheduled to begin and three-and-one-half months after the initial information was filed. 132 Wn.2d at 243-44. The State admitted that "it possessed all of the information necessary to file all of the charges when it filed the initial information." *Id.* at 243. The *Michielli* court stated, "The long delay, without any justifiable explanation, suggests less than honorable motives." *Id.* at 244. Further, the court held that the defendant was prejudiced because he was forced to waive his speedy trial right or go to trial unprepared. *Id.* The court also noted, "Even though the resulting prejudice to Defendant's speedy trial right may not have been extreme, the State's dealing with Defendant would appear unfair to any reasonable person." *Id.* at 246.

In *Ralph Vernon G.*, the State informed the defendant five days before trial that it would be amending the information to add additional charges and filed additional charges one day before trial even though they were aware of the additional charges for nearly one month. 90 Wn. App. at 19, 22. The State's statements supported an inference that the State delayed bringing the charges "until they could be used to persuade Mr. G. to accept a plea agreement or waive his right to speedy

17

trial." *Id.* at 22. On appeal, the court found that such a delay showed failure on the part of the State to act with due diligence. *Id.*

In *Earl*, the defendant argued that the State violated his right to a speedy trial when the State sought to amend the information on the day of trial to allege a new count involving a different victim and did not inform the defendant of the amendment until the night before trial. 97 Wn. App. at 411-13. The State conceded that the late amendment was not based on new information, but on information it had possessed for eight months. *Id.* at 411.

*Michielli*, *Ralph Vernon G.*, and *Earl* are distinguishable. Here, unlike in *Michielli* and *Earl*, the State did not possess all of the information necessary to file the amended charges when it filed the initial information. *See Michielli*, 132 Wn.2d at 243; *Earl*, 97 Wn. App. at 411. Also, unlike in *Ralph Vernon G.*, there is no evidence to support an inference that the State delayed bringing the charges for tactical purposes. *See Ralph Vernon G.*, 90 Wn. App. at 22. Instead, the State attempted over the course of months to contact Pace, who proved to be an essential witness for the witness tampering charge and also provided testimony for the no contact order violation charge, which arose from the same phone call as the witness tampering charge. Further, the State notified Celaya that it intended to amend the information the same day it received and reviewed the report regarding Pace's agreement to cooperate with the State. Therefore, the State had a "justifiable explanation" for the delay. *See Michielli*, 132 Wn.2d at 244.

Further, defense counsel was aware as early as September 19, 2017, that the State was waiting for a "report on Jail call NCO violations if any." CP at 15. And the State provided notice to Celaya about its intent to amend the information ten calendar days, or eight business days, before trial. Celaya argues that defense counsel was not able to see the notice until February 4, 2018

because defense counsel was sick and then had to tend to a childcare matter. However, the State could not have anticipated defense counsel's delay in retrieving the State's messages.

Celaya asserts that defense counsel stated that he would need at least two weeks to prepare to defend the new charges brought, which was longer than the eight business days of notice provided by the State. However, Celaya provides only a conclusory argument without any evidentiary support that it would have taken defense counsel two weeks to prepare for the new charges by merely stating, "Given the difficulty the State claimed it had contacting Pace for an interview, it was reasonable for the defense to anticipate needing significant time to interview the witness and do other trial preparation." PRP at 17.

Celaya also argues that the State "doubled the complexity of the trial," as the trial lasted seven days when the State had originally expected the trial to last three to four days. PRP at 17. However, the State's estimation of three to four days for the trial, which was similar to defense counsel's estimation of four to five days, was merely an estimation and there is no evidence to support that the trial was prolonged due to the additional charges.

The trial court concluded that the State did not mismanage the case nor did it commit prosecutorial misconduct in the management of the case; thus, the State did not commit governmental misconduct. The record supports the trial court's conclusion. Because the State did not commit government misconduct, there is no reasonable probability that the charges would have been dismissed had defense counsel sought a dismissal. Therefore, Celaya's defense counsel's performance did not fall below an objective standard of reasonableness and was not deficient. Celaya has failed to show that he received ineffective assistance of counsel when defense counsel did not move for dismissal based governmental misconduct due to a speedy trial violation.

19

3.      Failure To Move To Dismiss For The State's Misstatement Of The Law

Celaya argues that he received ineffective assistance of counsel because defense counsel failed to move to dismiss for prosecutorial misconduct when the State misstated the law and defense counsel had no strategic reason not to move to dismiss. Celaya claims the State misstated the law when it stated that it waited to amend the information until it could secure testimony from a witness who was needed to show that a threat had been conveyed to K.J. because "that is an essential element to the Witness Tampering to know whether or not it was actually conveyed to [K.J.]." VRP (Feb. 8, 2018) at 11. We disagree.

Here, the State concedes that it misstated the law when it argued that conveyance of a threat is "an essential element" to witness tampering. Br. of Resp't at 39; VRP (Feb. 8, 2018) at 11. Whether the threat is conveyed to the witness is not an element of the crime and is not necessary to prove witness tampering. *See State v. Williamson*, 131 Wn. App. 1, 6, 86 P.3d 1221 (2004) ("A person violates the witness intimidation statute even if the threat is not communicated to the victim.").

The State misstated the law to the trial court during its argument to amend the information. The State stated that it could not bring the additional charges earlier because it needed Pace to show that the threat was conveyed to K.J. However, in its argument the State also stated, "I can't bring that charge until I have those witnesses that are all corroborating that story." VRP (Feb. 8, 2018) at 12.

In its ruling, the trial court did not state that it relied on the State's misstatement of the law in making its decision to allow the amended information. Instead, the trial court stated, "I don't think that the State mismanaged the case. I understand why they felt like they couldn't—they

20

didn't have a good-faith basis to proceed on witness tampering charges." VRP (Feb. 8, 2018) at 30. The trial court further stated, "This is when the information developed." VRP (Feb. 8, 2018) at 33.

Celaya points to no evidence that would suggest the trial court would have denied the motion to amend had the State not misstated the law. Instead, the record shows that the trial court relied on the development of information in the case to allow the amendment. And, as implied in its argument, the State relied on Pace's testimony to prove the witness tampering charge. Indeed, Pace's testimony laid the foundation for the motion to admit the taped recording of the call that Celaya made to him from jail. Pace's testimony also provided context for the phone call, during which Celaya asked Pace to threaten to kick K.J. out of the house if she did not drop the charges against him. Pace testified that he was Celaya and K.J.'s landlord and had the power to kick her out of the house. Therefore, the record shows that the State intended to rely on, and did rely on, Pace's testimony to prove the witness tampering charge.

Celaya fails to show that the trial court would have denied the State's motion to amend the information if defense counsel had brought a motion to dismiss based on the State's misstatement. Thus, Celaya's argument that defense counsel's performance was deficient when counsel failed to bring a motion to dismiss for government misconduct based on the State's misstatement fails.

Celaya also argues that he received ineffective assistance of counsel because his defense counsel had "no strategic reason not to move to dismiss" and provides a declaration from defense counsel stating he did not have a strategic reason not to move to dismiss at the hearing or after the hearing. PRP at 13 (bold face omitted). But even if defense counsel did not have a strategic reason to not move to dismiss, Celaya's ineffective assistance of counsel claim fails for the same reason

the claim fails above—there is no reasonable probability that such a motion would have been successful.

Given the record, defense counsel's performance was not deficient. Thus, Celaya did not receive ineffective assistance of counsel.

CONCLUSION

Celaya did not receive ineffective assistance of counsel because Celaya has not shown that a motion to dismiss based on government misconduct when the State violated his speedy trial rights nor a motion to dismiss based on the State's misstatement of the law in its arguments to amend the information would have been granted. Therefore, we deny Celaya's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, J.

Cruser, A.C.J.